## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 23-cr-151 (SRN/TNL) |
| Plaintiff, | |
| | *FILED UNDER SEAL*[1] |
| v. | **ORDER** |
| Theodore Harold Edward Bobo, Jr., | |
| Defendant. | |

Esther Soria Mignanelli and Joseph Scott Teirab, Assistant United States Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN; and Ben Tonkin, Trial Attorney, U.S. Department of Justice, 1301 New York Avenue Northwest, Washington, DC 20005 (for the Government); and

William J. Mauzy and William R. Dooling, Mauzy Law Office, P.A., 650 Third Avenue South, Suite 260, Minneapolis, MN 55402 (for Defendant).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on the following pretrial motions: the Government's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 16(b), 12.1, 12.2, 12.3, and 26.2, ECF No. 20; Defendant's Motion for Discovery Including Laboratory Case Files Pursuant to *Brady v. Maryland*, ECF No. 24; Defendant's Motion to Discover Confidential Informants, ECF No. 25; and Defendant's Motion for *Franks* Hearing, ECF No. 26.[2]

---

[1] This Order has been filed under seal temporarily to allow for the parties to confirm whether certain information is in fact publicly available. *See infra* n.8.

[2] *See, e.g.*, *United States v. Mays*, No. 19-cr-75 (ECT/HB), 2019 WL 4565636, at *3-4 (D. Minn. Sept. 20, 2019) (request for *Franks* hearing non-dispositive issue); *see also, e.g.*, *United States v. Green*, No. 19-cr-103(3) (MJD/ECW), 2020 WL 6337705, at *2 (D. Minn. Oct. 29, 2020).

A hearing was held on June 20, 2023. ECF No. 33. Esther Soria Mignanelli appeared on behalf of the Government and William J. Mauzy appeared on behalf of Defendant.

## II. Government's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 16(b), 12.1, 12.2, 12.3 and 26.2

The Government's motion seeks discovery available under Federal Rules of Criminal Procedure 12.1, 12.2, 12.3, 16(b), and 26.2, as well as the establishment of deadlines for the disclosure of expert witnesses. At the hearing, Defendant had no objection to the Government's requests. Tr. 3:13-21, ECF No. 39.[3] Further, the parties agreed to make their principal expert disclosures no later than 30 days before trial and any rebuttal expert disclosures no later than 10 days prior to trial. Tr. 3:22-4:15.

The Government's motion is granted. Consistent with the parties' agreement, no later than 30 days prior to trial, the parties shall make their principal expert disclosures, and, no later than 10 days prior to trial, the parties shall make any rebuttal expert disclosures. *See* Fed. R. Crim. P. 16(a)(1)(G), (b)(1)(C).

## III. Defendant's Motion for Discovery Including Laboratory Case Files Pursuant to *Brady v. Maryland*

Defendant moves for an order "compelling the [G]overnment to produce documents and other information pursuant to its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963)." ECF No. 24 at 1. Besides a general demand for *Brady* material, Defendant specifically requests the complete laboratory case files for analysis related to

---

[3] The Court notes that, although the transcript of the motions hearing has been temporarily sealed to allow for the process of redacting any personal identifiers, *see generally* D. Minn. LR 5.5, any notice of intent to request redaction was due July 28, 2023, and no such notice was filed. ECF No. 39.

(1) DNA on the firearms at issue; (2) the alleged narcotics; and (3) latent fingerprints. The Government states that it is aware of its obligations under *Brady*, *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny and that it has complied with and will continue to comply with those obligations.  The Government objections to Defendant's motion "to the extent it goes beyond the requirements of *Brady*, *Giglio*, and their progeny."  Gov't Resp. at 3, ECF No. 15.  The Government further states that, "to the extent this motion requires determinations or disclosures relative to which witnesses the Government will call at trial, the Government will make such disclosures consistent with the trial schedule set by the District Judge."  Gov't Resp. at 3-4.

The Government's response only addressed Defendant's request for the DNA file, wherein the Government stated that it was not opposed to this request and was "working on obtaining and making available [the file] to the defense."  Gov't Resp. at 4.  At the hearing, the Court sought further clarification regarding each of Defendant's three requests.  *See* Tr. 4:16-8:4.  Ultimately, there was no objection by the Government to any of Defendant's requests and the Government's responsive efforts were at various stages. *See* Tr. 5:7-7:23.

"The Due Process Clause of the Fifth Amendment requires the government to disclose to the accused favorable evidence that is material to guilt or punishment." *United States v. Dones-Vargas*, 936 F.3d 720, 722 (8th Cir. 2019) (citing *Brady*, 373 U.S. at 87); *see United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008) ("*Brady* applies to exculpatory and impeachment evidence, whether or not the accused has specifically requested the information." (citations omitted)).  "The [Supreme] Court has extended

*Brady* protection to witness-credibility evidence when the reliability of the witness 'may well be determinative of guilt or innocence.'" *United States v. Sigillito*, 759 F.3d 913, 930 (8th Cir. 2014) (quoting *Giglio*, 405 U.S. at 154); *accord Dones-Vargas*, 936 F.3d at 722; *see Whitehill*, 532 F.3d at 753. "One reason for this extension to witness-credibility evidence is because exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Sigillito*, 759 F.3d at 930 (quotation omitted). The Eighth Circuit Court of Appeals "ha[s] determined that witness motivations, like the payment of money as an incentive to change testimony, fall within the *Brady* disclosure requirement." *Id.* (citing *United States v. Librach*, 520 F.2d 550, 554 (8th Cir. 1975)). "Furthermore, the prosecutor must disclose the possibility of a reward that gives the witness a personal stake in the defendant's conviction." *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 683 (1985)).

Defendant's motion is granted. The Government shall comply fully with its obligations under *Brady*, *Giglio*, and their progeny and disclose all exculpatory and impeachment evidence as well as Jencks Act, 18 U.S.C. § 3500, and Federal Rule of Criminal Procedure 26.2 materials. *See United States v. Mazzulla*, 952 F.3d 1091, 1100 (8th Cir. 2019). To the extent it has not already done so, **within seven days from the date of this Order**, the Government shall produce the complete laboratory case files for analysis related to (1) DNA on the firearms at issue; (2) the alleged narcotics; and (3) latent fingerprints.[4] If the Government subsequently discovers additional exculpatory or

---

[4] The Court understands that the latent fingerprint analysis may in fact be part of the DNA file. *See* Tr. 5:7-15, 7:9-12.

4

impeachment evidence, it shall disclose such evidence as soon as practicable after such discovery.

### IV. Defendant's Motion to Discover Confidential Informants

There is no dispute that two informants were utilized in the underlying state investigation. *See infra* Sections V.A.1, .3. Defendant asserts that "[t]he identity and full contents of the communication[s] of both informants is relevant" to his motion for a *Franks* hearing, "particularly since the officer in this case appears to have conflated both informants into a single 'reliable' informant for purposes of the affidavit" in support of the warrant to obtain location information regarding Defendant's cell phone.[5] ECF No. 25 at 2; *see infra* Sections V.A.1, .3. Defendant also asserts that "[b]oth informants may also be pertinent to [his] defense in the case overall." ECF No. 25 at 2. In the alternative, Defendant requests that the Court review *in camera* "the information known to the Minneapolis Police Department on both informants[] to determine whether they possess information material to [his] defense." ECF No. 25 at 3.

The Government responds that the informants "were used merely as 'tipsters,'" and therefore it "is not required to disclose their identit[ies]." Gov't Resp. at 4. The Government additionally contends that Defendant has not shown that additional information regarding the informants "is material to the determination of the case." Gov't Resp. at 5 (quotation omitted).

"In *Roviaro v. United States*, the Supreme Court recognized the government's

---

[5] Defendant's motion previewed introducing certain communications between counsel in the state case. ECF No. 25 at 2. At the hearing, Defendant stated he would not be offering those communications as an exhibit. Tr. 8:5-22.

privilege to withhold the identity of a confidential informant." *United States v. Alcantar*, 271 F.3d 731, 739 (8th Cir. 2001) (citing 353 U.S. 53, 59 (1957)).   In determining whether disclosure of an informant's identity is required, "the threshold issue is whether the informant is a material witness." *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001); *see United States v. Grisham*, 748 F.2d 460, 463 (8th Cir. 1984) (noting "the central importance of materiality").

"Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995) (emphasis added) (footnote omitted).   "In cases involving 'tipsters' who merely convey information to the government but neither witness nor participate in the offense, disclosure is generally not material to the outcome of the case and is therefore not required."  *United States v. Harrington*, 951 F.2d 876, 878 (8th Cir. 1991) (citing *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987)); *accord United States v. Lapsley*, 334 F.3d 762, 764 (8th Cir. 2003) ("Consequently, disclosure is typically not required when the informant merely conveys information to the government but neither witnesses nor participates in the offense." (quotations omitted)); *Alcantar*, 271 F.3d at 739 (government had no obligation to reveal informant's identity where informant did not participate in crime charged or testify at trial).

Defendant bears the burden of showing beyond mere speculation that the disclosure of the informants would be material and helpful to his case.  *United States v. Roberson*, 439 F.3d 934, 940 (8th Cir. 2006); *Alcantar*, 271 F.3d at 739; *see also United States v. Oliver*, 950 F.3d 556, 562 (8th Cir. 2020); *Grisham*, 748 F.2d at 464.  If a trial

court orders disclosure absent a showing of materiality, it abuses its discretion." *United States v. Bias*, No. 17-cr-318(06) (SRN/FLN), 2018 WL 3336770, at *2 (D. Minn. July 6, 2018).

Based on the record before the Court, there is nothing to suggest that the two informants involved were anything other than tipsters. Nor has Defendant offered anything beyond mere speculation that their identities and communications are material here. Moreover, as explained more fully below, *see infra* Sections V.A.1, .C, much of the information provided by the "informant" (really two informants) in support of the warrant to track Defendant's cell phone was verified by the affiant police officer by reviewing surveillance footage and through law enforcement databases. Accordingly, Defendant's motion, including his request for *in camera* review, is denied. *See Oliver*, 950 F.3d at 562-63.

## V. Defendant's Motion for *Franks* Hearing

Defendant moves for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1974), asserting that two state warrants related to this case contain material misrepresentations of fact, namely, that (1) law enforcement in fact received information from two informants, rather than the single informant referred to in the application, and the application addressed only the credibility of one informant and not the other, and (2) Defendant was misrepresented as a fugitive, hiding from law enforcement.[6]

---

[6] The Government asserts Defendant "appears to have abandoned one of the alleged material falsehoods from his original motion," namely, "that he was previously a suspect in an unsolved shooting investigation." ECF No. 38 at 2 n.1. As the Court reads Defendant's motion, the bullet points on page 2 were a summary of items raised by "Defendant's *state-level* counsel." ECF No. 26 at 2 (emphasis added).

In connection with this motion, Defendant offered and the Court received: Exhibit A, the application, affidavit, and search warrant for certain call records and tracking information regarding Defendant's cell phone ("Tracking Warrant");[7] Exhibit B, the application and search warrant for Defendant's person and a residence in Minneapolis, Minnesota ("Residence Warrant"); Exhibit C, a memorandum submitted in state district court by the Hennepin County Attorney's Office; and Exhibit D, the transcript of proceedings in state district court related to the warrants at issue, which has been filed under seal.[8]    The parties presented oral argument and submitted multiple rounds of briefing.  *See generally* Tr. 12:11-33:20; ECF Nos. 26, 32, 35, 38, 40, 43; *see also* ECF No. 48.

### A. Background

#### 1. Tracking Warrant

A police officer with the Minneapolis Police Department applied for a tracking warrant for Defendant's cell phone in connection with a weapons investigation involving Defendant.  *See generally* Ex. A.  The warrant was based in part on information purportedly received from a single confidential reliable informant.  It was subsequently

---

[7] The copy of Exhibit A initially provided to the Court by Defendant appeared to be unexecuted by the state court judge.  *See generally* ECF No. 26-1.  Following the hearing, Defendant provided a copy of Exhibit A by e-mail to the Court and counsel that was signed by the issuing state court judge.  *See* Tr. 10:23-11:21.  Further, although Exhibit A states it is "UNDERSEAL [sic]," *see, e.g.*, Ex. A at 1, 7, it is the parties' understanding that these documents are public and no longer sealed.  Tr. 10:7-22.

[8] At the hearing, there was some uncertainty as to whether Exhibit D was subject to a state-court protective order.  Tr. 29:24-30:13.  The Government requested that Exhibit D be filed under seal, and the Court accepted Exhibit D as a sealed exhibit.  Tr. 30:14-31:1.

Through publicly available state-court filings, however, it appears that Exhibit D was publicly filed in Defendant's state case on March 9 and April 21, 2023.  *State v. Bobo*, No. 27-CR-21-16490 (Minn. Dist. Ct.) (Index #64), (Index #69).  Accordingly, within seven days from the date of this Order, the parties shall have (1) met and conferred as to whether Exhibit D and this Order may be unsealed, and (2) filed a joint letter indicating whether these documents may be unsealed and, if not, explaining why they should remain sealed.

determined that the information had in fact come from two informants, one of whom was a confidential reliable informant who had previously worked with the affiant police officer. Ex. C at 2 n.1. As later explained, the other informant worked with another police officer and the affiant police officer knew this second informant had "provided accurate and reliable information in the past." Ex. C at 2 n.1. The Court refers to the conflated informants as the "informant."

According to the affiant police officer, "[w]ithin the last 72 hours," the officer was contacted by the "informant" who observed Defendant in possession of a handgun at a specified intersection, sitting in a champagne-colored vehicle near a grocery store. Ex. A at 3. The "informant" described the handgun to the officer. Ex. A at 3-4. The "informant" had also witnessed Defendant "in possession of and selling narcotics from the same area." Ex. A at 4. The "informant" provided the officer with a phone number, which the "informant" had used to contact Defendant within the last 72 hours. Ex. A at 4. As to the reliability of the "informant," the officer stated that he "has worked with this ['informant'] on numerous occasions in the past"; information from the "informant" "has been found to be credible, timely, and truthful"; and information from the "informant" "has led to the recovery of narcotics and firearms in the past." Ex. A at 4.

The affiant police officer explained that he had reviewed Defendant's "criminal history and found that he has several past violent felony convictions prohibiting him from possessing firearms and/or ammunition." Ex. A at 4. The officer also reviewed surveillance footage of the intersection by the grocery store "during the time described by the ['informant'] and located a champagne[-]colored vehicle parked near [the grocery

store]," which "appeared to have been occupied by [Defendant]" during the time in question.  Ex. A at 4.  The officer also ran the "phone number through law enforcement databases and found it . . . registered to [Defendant]."  Ex. A at 4.

The affiant police officer further explained there was a recent shooting approximately a block away and "just south" of the grocery store, where 911 callers reported "that the suspect(s) of the shooting were Bloods gang members" and that "one male who shot at the group was a male in a wheelchair."  Ex. A at 4.  The officer "witnessed numerous Bloods gang members" in the area "shortly after the shooting occurred," and Defendant "is the only Bloods gang member . . . [the officer] is aware of that is bound to a wheelchair from a previous shooting injury."  Ex. A at 4.

Among other things, the application sought tracking information "so that investigators may locate the phone and arrest Target for the outstanding warrant"; "determine the fugitive's associates and how and through whose assistance the fugitive is currently hiding from law enforcement"; and "identify other participants who may be possibly harboring the fugitive."  Ex. A at 4-5.  There is no dispute that, at the time of the application, there was no warrant for Defendant's arrest and he was not a fugitive from law enforcement.  Ex. C at 3 n.2; *see also* ECF No. 32 at 8; ECF No. 38 at 3.

### 2.  Residence Warrant

Approximately two weeks later, the affiant police officer subsequently obtained a warrant to search Defendant's person and a residence in Minneapolis, Minnesota, based in part on the location information obtained through the Tracking Warrant and again for purposes of conducting an investigation regarding Defendant.

10

The affiant police officer again described Defendant as a member of the Bloods gang "who is wheelchair bound from a previous shooting" and repeated information regarding Defendant that had been obtained from an informant, including a phone number the informant "had used to contact [Defendant] multiple times in the past." Ex. B at 2-5. The officer also stated that the informant had identified the location of an intersection Defendant frequents "where he sells narcotics and is 'in charge' of the area" and identified Defendant from a recent photograph. Ex. B at 2-5. The informant had "witnessed [Defendant] in possession of a firearm described as a black semi-automatic handgun" within the last 72 hours and stated that Defendant "is always armed as he uses the handgun to protect his narcotics and himself from rival gang members." Ex. B at 3. Further, the informant identified a Minneapolis residence "frequent[ed]" by Defendant where he "sleeps overnight" and had "witnessed [Defendant] at this address in possession of a handgun and narcotics." Ex. B at 3-5. The officer stated that he had "worked with this [informant] for over one year" and the information provided by the informant "has been found to be timely, accurate, and truthful" and "has been used to recover numerour [sic] firearms and narcotics." Ex. B at 3-5.

The affiant police officer described his investigation into Defendant's criminal history and his ineligibility to possess firearms and ammunition. Ex. B at 3-5. The officer described how he had received location information from the Tracking Warrant for Defendant's cell phone. Ex. B at 3. The officer further described how he had "conducted both electronic and physical surveillance" of Defendant "[o]ver the last several weeks" and observed Defendant "conduct hand to hand transactions," which, in

the officer's training and experience, were believed to be narcotics transactions. Ex. B at 3-5. The officer explained that "[c]ell site locations from [Defendant's] phone put [Defendant's] phone in the area of [the Minneapolis residence] on a daily basis." Ex. B at 3-5.

The affiant police officer also described the shooting Defendant was suspected to be involved in and the remarks of the 911 callers, including the description of a man in a wheelchair pulling out a gun. Ex. B at 3-5 to 4-5. The officer also described how he had witnessed Defendant in the area of the shooting "just prior to the shooting" and Defendant "was the only male in a wheelchair" in the area "prior to the shooting." Ex. B at 4-5.

Among other things, the application sought a warrant to search Defendant and the Minneapolis residence for narcotics and firearms. Ex. B at 1-3.

### 3. State-Court Proceedings

In connection with proceedings in state district court, Defendant requested "a *Franks* hearing, alleging material misrepresentations in both search warrants." Ex. C at 1. In briefing, the county prosecutor acknowledged that it had learned from the affiant police officer that the Tracking Warrant was based on information received from two informants, rather than the single informant referenced, and the officer's statement "about past accuracy and reliability" of the "informant" related to the second informant. Ex. C at 2 n. 1; *see also* Ex. C at 7 (conceding "there is an omission specifying that there were two informants and which informant the statement about past reliability relates to" in the Tracking Warrant). The county prosecutor also acknowledged that the references to there

being a warrant for Defendant's arrest and his fugitive status were not accurate, and had been mistakenly left in by the affiant police officer from a previous warrant. Ex. C at 3 n.2; *see also* Ex. C at 6 (conceding status as fugitive was misrepresentation). The county prosecutor further stated that only one informant was involved in the Residence Warrant. Ex. C at 2 n.1.

The state district court held a *Franks* hearing at which the affiant police officer testified. *See generally* Ex. D. The officer testified that for certain types of warrants, including tracking warrants, he essentially uses an "already formatted" template and there is a fair amount of language that gets copied and pasted from warrant to warrant. Ex. D at 22:24-23:18. The officer acknowledged that the references to Defendant having an outstanding arrest warrant and being a fugitive from law enforcement were not true. Ex. D at 26:7-16; *see also* Ex. D at 42:3-8, 43:22-25. When asked how these statements made it into the affidavit, the officer testified that the majority of cell-phone tracking warrants are used in fugitive apprehension and referenced the practice of cutting and pasting. Ex. D at 26:17-23; *see* Ex. D at 56:2-22. The officer testified that the inclusion of these statements was an "oversight" on his part and agreed that they were "a misrepresentation." Ex. D at 26:17-23, 27:9-14, 44:5-6. The officer testified that he was not even aware that the sentences had been included until they were brought to his attention by the county prosecutor. Ex. D at 26:24-27:8, 44:1-4. The officer further testified that the inclusion of the statements was not intentional, and "[t]here was no intention or malice in this." Ex. D at 27:15-17. The officer also acknowledged that the Tracking Warrant was based on information provided by two informants. *See* Ex. D at

49:20-50:16, 56:23-57:14.[9]

Defendant's state case was subsequently dismissed after he was federally indicted. *State v. Bobo*, No. 27-CR-16490 (Minn. Dist. Ct. May 15, 2023) (Index #79).

### B. Legal Standard

Under *Franks*,

> [a] defendant is entitled to a hearing to determine the veracity of a search warrant affidavit if he or she can make a substantial preliminary showing that a false statement was included in the affidavit (or that relevant information was omitted from it) intentionally or recklessly, and that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible to find probable cause.

*United States v. Mathison*, 157 F.3d 541, 547-48 (8th Cir. 1998) (citing 438 U.S. at 155-56); *see also, e.g.*, *United States v. Patterson*, 68 F.4th 402, 414 (8th Cir. 2023). "[A] misstatement must be the product 'of deliberate falsehood or of reckless disregard for the truth. . . . Allegations of negligence or innocent mistake are insufficient.'" *United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007) (alteration in original) (quoting *Franks*, 438 U.S. at 171). "[R]ecklessness may be inferred from the fact of omission of information from an affidavit when the material omitted would have been 'clearly critical' to the finding of probable cause." *Id.* (quotation omitted); *see also, e.g.*, *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011). "In determining if an affiant's statements were made with reckless disregard for the truth, the test is whether, after

---

[9] Defendant asserts that "[t]he transcript of the state-level *Franks* hearing suggests the affiant [police officer] was never questioned about the conflation of two informants into one." ECF No. 35 at 8. There was limited questioning regarding the informants during the state-court hearing as a number of objections were sustained as to the scope of the testimony. Ex. D at 48:24-49:18; *see* Ex. D at 60:11-18. It was subsequently agreed that the issue of the informants would be addressed in briefing. Ex. D at 58:20-59:12.

viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *McIntyre*, 646 F.3d at 1114 (quotation omitted); *see also, e.g.*, *United States v. Hansen*, 27 F.4th 634, 638 (8th Cir. 2022).

"The requirement of a substantial preliminary showing is not lightly met." *Mathison*, 157 F.3d at 548 (quotation omitted); *see also, e.g.*, *United States v. Randle*, 39 F.4th 533, 537 (8th Cir. 2022). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *Mathison*, 157 F.3d at 548; *see also Franks*, 438 U.S. at 171.

Further still, even if such a showing is made, "and, if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72 (footnote omitted).

### C. Tracking Warrant Issues

Defendant asserts that "the omission of critical details regarding the confidential informants, specifically, that there were two of them, elided information vital to the . . . probable cause analysis: the warrant contains information on the credibility of one informant but not the other." ECF No. 26 at 3. Defendant asserts that "[t]he Government cannot sidestep the materiality analysis by asserting that these particular informants were both quite reliable, when that information was never presented to the judge who issued the warrant." ECF No. 35 at 6-7. In light of the affiant police officer's "obvious

experience in interviewing informants and incorporating their allegations into affidavits," Defendant asserts the conflation of two informants into one "could not have been merely a negligent error" and amounted to recklessness.  ECF No. 35 at 9.

Defendant further asserts that it was "even more problematic" to "suggest[ he] was a fugitive, hiding from law enforcement, when in fact he was not," and this "obviously bore on the . . . decision to authorize the [S]tate of Minnesota to track [his] every movement for days via his cell phone."  ECF No. 26 at 3.  Defendant asserts that "[t]he text referring to an 'arrest warrant' and a defendant's fugitive status would have, if true, supplied a completely separate basis for probable cause to arrest" and, "[i]f believed, no other components of the warrant would have even been necessary."  ECF No. 35 at 5-6. According to Defendant, the affiant police officer "should not be able to hide behind the fact that critical information in the affidavit, having nothing to do with the defendant, was accidentally 'copied and pasted,'" and the officer's actions were reckless.  ECF No. 35 at 8.

Based on the record before the Court, the Court is hard-pressed to conclude that the affiant police officer's omission of certain information and the erroneous inclusion of other information was done in an intentional or reckless manner.  *See Franks*, 438 U.S. at 171; *Williams*, 477 F.3d at 559.  But, even assuming for sake of argument that Defendant has made a sufficient showing as to recklessness, Defendant must also "show that the alleged false statement or omission was necessary to the finding of probable cause" in order to obtain a *Franks* hearing.  *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) (quotation omitted); *see also Franks*, 438 U.S. at 171-72.

16

"A supporting affidavit establishes probable cause to issue a search warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) (quotation omitted); *see United States v. Skarda*, 845 F.3d 370, 376 (8th Cir. 2016) ("A showing of probable cause requires evidence of a nexus between the contraband and the place to be searched." (quotation omitted)); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."). Defendant asserts that "[w]hen taken as a whole, the cumulative false statements in [the Tracking Warrant] are material" and "without them there is no probable cause." ECF No. 35 at 4.

There is no dispute that the Tracking Warrant conflated information received from two informants into a single "informant" and that the supporting affidavit only addressed the reliability of one of these informants. "It is well-established that the statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant." *United States v. Petruk*, 929 F.3d 952, 959 (8th Cir. 2019) (quotation omitted). "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." *Williams*, 477 F.3d at 559 (quotation omitted); *see also, e.g.*, *Petruk*, 929 F.3d at 959. "[W]hen an informant has provided information in the past *or* where his tip was independently corroborated, a

17

court may deem the informant's tip sufficiently reliable to support a probable cause determination." *Petruk*, 929 F.3d at 960 (quotation omitted); *see also, e.g.*, *Keys*, 721 F.3d at 518. "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *Keys*, 721 F.3d at 518 (quotation omitted). Because it is not apparent from the four corners of the application which informant the affiant police officer's statement regarding the "informant's" reliability pertains to and what information was provided by that informant, the Court has, for purposes of this motion, treated both informants as if they have no previous track record of reliability. *See United States v. Evans*, 4 F.4th 633, 636 (8th Cir. 2021) ("When an issuing court relies solely on an affidavit to determine whether probable cause exists, th[e reviewing] court only looks to the information found within the four corners of the affidavit." (quotation omitted)).

Striking the references in the affidavit to there being a warrant for Defendant's arrest, any fugitive status, and the reliability of the "informant," there nevertheless remains ample content in the affidavit that could support a finding of probable cause for obtaining location information regarding Defendant based on the affiant police officer's verification of information provided by the "informant," the officer's own investigation, and other information known to the officer.

The "informant" reported seeing Defendant in possession of a handgun at a certain intersection in a particular vehicle, describing the handgun. The "informant" also reported seeing Defendant in possession of and selling narcotics in the same area. In

addition to this information, the "informant" provided a phone number which the informant had used to contact Defendant in the last 72 hours, but did not know where Defendant lived. The affiant police officer verified the information provided by the informant by watching surveillance footage of that intersection at the time described by the "informant" and observed a vehicle matching the description provided by the "informant" which appeared to have been occupied by Defendant. *See Petruk*, 929 F.3d at 959-60; *Keys*, 721 F.3d at 518. Further, the officer verified that the phone number provided was in fact registered to Defendant. *See Petruk*, 929 F.3d at 959-60; *Keys*, 721 F.3d at 518. The officer also reviewed Defendant's criminal history, noting several convictions that prohibited him from being in possession of a firearm and ammunition.

In addition, the affiant police officer described his experience "working in the investigation of weapons violations, gang[-]related crimes, narcotics violations, and in the apprehension of violent offenders"; a recent shooting in an area just south of the intersection where 911 callers had reported "that the suspect(s) of the shooting were Bloods gang members"; his observation of "numerous Bloods gang members" in the area "shortly after the shooting occurred"; Defendant's status as a known Bloods gang member; a 911 caller's report "that one male who shot at the group was a male in a wheelchair"; and Defendant being "the only Bloods gang member [the officer] is aware of that is bound to a wheelchair from a previous shooting injury." Ex. A at 3, 4.

The information that remained could support a finding that, at minimum, there was a fair probability that evidence of suspected weapons offenses would be in data generated by the tracking Defendant's cell phone. As there remained sufficient content in the

application that could support of a finding of probable cause, Defendant has not shown that the inaccurate information was necessary and therefore is not entitled to a *Franks* hearing on the Tracking Warrant.  *See Franks*, 438 U.S. at 171-72; *see, e.g.*, *Keys*, 721 F.3d at 518.

### D. Residence Warrant Issues

Initially, because the Residence Warrant was based in part on information gained from the Tracking Warrant, Defendant's challenge to the Residence Warrant was that it was essentially fruit of the poisonous tree.  *See* ECF No. 26 at 3-4; Tr. 13:20-13, 21:8-11.

Following the motions hearing and the completion of briefing on Defendant's motion, Defendant requested that he be permitted to supplement the record regarding the Residence Warrant.  *See generally* ECF No. 40.  Defendant stated that defense counsel had recently "received GPS and 'cell site' data relevant to [his] case," which had not been available "at the time he made his initial request for the *Franks* hearing."[10]  ECF No. 40 at 3.  In his request, Defendant asserted that, "based on [defense] counsel's non-expert review of the GPS and cell-site data," "the cell site data obtained from the [T]racking [W]arrant cannot be used to establish that [he] was at [the Minneapolis residence] on a 'daily basis' or indeed at all."  ECF No. 40 at 4 (footnote omitted).  Defendant "further submitted that the corresponding GPS data" did not place him there either.  ECF No. 40 at 4.  Defendant also made additional arguments regarding the informant providing information in connection with the Residence Warrant.  Defendant's request was granted

_____

[10] To the extent Defendant asserts that he "originally requested [this information] in his motion for a *Franks* hearing" and renewed his request at the motions hearing, ECF No. 40 at 3, the record does not reflect an explicit request by Defendant for the GPS and cell-site data.

in part in so far as he sought "to provide additional argument in support" of his *Franks* motion and was otherwise denied.  ECF No. 41.  The Government was permitted to file a supplemental response limited to addressing the issues raised in the request.

Following the Government's supplemental response, and approximately one month after his supplementation request, Defendant filed the declaration of a forensic analyst, who reviewed the data provided in response to the Tracking Warrant.  *See generally* ECF No. 48.  The forensic analyst explained that the data returned contained two types of location data.  ECF No. 48 ¶¶ 13-14.  One data set contained GPS coordinates, "showing the exact location of . . . Defendant's cell phone."  ECF No. 48 ¶ 14 (footnote omitted).  Another data set contained "use of cellular phone towers for the approximate vicinity of [Defendant's cell phone], but not the specific GPS data."  ECF No. 48 ¶ 14.  Thus, one data set "contained precise location data of Defendant's cell phone" and the other "contained approximate location data of Defendant's cell phone." ECF No. 48 ¶ 14.

The forensic analyst explained that the more precise GPS data showed that Defendant's cell phone "was never in close proximity" to the Minneapolis residence, which contradicted the statement of the affiant police officer that Defendant was believed to reside at the Minneapolis residence.  ECF No. 48 ¶ 16; *see also* ECF No. 48 ¶ 18. Rather, the GPS data showed that Defendant's cell phone was "being used repeatedly and frequently" approximately half a mile away.  ECF No. 48 ¶ 17.

As to the cell-tower data, the forensic analyst acknowledged that the affiant police officer's statement that cell-site location data put Defendant in the area of the

Minneapolis residence on a daily basis was "true," but described it as "misleading." ECF No. 48 ¶ 19. The forensic analyst explained that the same cell tower covered the Minneapolis residence and the area where the GPS data placed Defendant's cell phone. ECF No. 48 ¶ 19. By "[u]sing cell tower activity and not GPS data, an individual's location can only be approximated, giving a radius of 1-2 miles from the location of the cell tower," and thus "[t]he coverage of the cellular tower would include hundreds of homes including [the Minneapolis residence]." ECF No. 48 ¶ 20. According to the forensic analyst, "[t]he Government decided to use the ambiguous data from the cell towers to support its application for a search warrant for [the Minneapolis residence] and withheld the GPS data, which directly contradicted the correlation between" Defendant and the Minneapolis residence. ECF No. 48 ¶ 20; *see also* ECF No. 48 ¶¶ 21-22.

The untimely declaration submitted by Defendant is certainly interesting. But, for the reasons that follow, even if the Court were to take this declaration into account, it does not change whether Defendant would be entitled to a *Franks* hearing on the Residence Warrant.

First, Defendant's own forensic analyst agrees that the affiant police officer's statement regarding the cell-site location data is "true." ECF No. 48 ¶ 19. Arguably, on this basis alone, it cannot be said that the officer's statement was a false, or that the officer must have entertained serious doubts as to its veracity or had obvious reasons to doubt its accuracy. *See McIntyre*, 646 F.3d at 1114.

Second, even again assuming that Defendant has made a sufficient showing that the affiant police officer's statement regarding the cell-site location data was made in

reckless disregard for the truth, he still must show that this statement was necessary to a finding of probable cause. This he cannot do.

Like the Tracking Warrant, the Residence Warrant was based on information received from an informant, the affiant police officer's own investigation, and information known to the officer. Unlike the Tracking Warrant, however, there is no informant-conflation issue here. As the county prosecutor explained in Exhibit C, the Residence Warrant was based on a single informant. Ex. C at 2 n.1.

The application explained that the informant: (1) reported Defendant frequented a certain intersection where he sold narcotics and was "'in charge' of the area"; (2) provided law enforcement with a phone number he used to contact Defendant with multiple times before; (3) identified Defendant in a recent photograph; (4) witnessed Defendant in possession of a handgun within the past 72 hours and reported that Defendant "is always armed as he uses the handgun to protect his narcotics and himself from rival gang members"; (5) reported that Defendant frequents the Minneapolis residence where he "sleeps overnight"; and (6) witnessed Defendant at the Minneapolis residence "in possession of a handgun and narcotics." Ex. B at 2-5 to 3-5. The affidavit goes on to explain that the affiant police officer has worked with the informant "for over one year," the informant has provided "timely accurate, and truthful" information, and the informant "has been used to recover numerour [sic] firearms and narcotics." Ex. B at 3-5. As stated above, an informant's tip may be deemed reliable when the informant has provided accurate information in the past, *see Petruk*, 929 F.3d at 960; *Keys*, 721 F.3d at 518, and "the statements of a reliable confidential informant are themselves sufficient to

support probable cause for a search warrant," *United States v. Jones*, 74 F.4th 941, 949 (8th Cir. 2023) (quotation omitted).

In addition, the affiant police officer reviewed Defendant's criminal history, which contained several convictions prohibiting him from possessing a firearm and ammunition. The officer also conducted surveillance of Defendant, witnessing him conduct a number of hand-to-hand transactions which, in the officer's training and experience, were believed to be narcotics transactions.

Further, the application included information about Defendant's suspected involvement in the shooting, including but not limited to the 911 reports that the suspects were Bloods gang members; one of the individuals who pulled out a firearm was a male in a wheelchair; and the affiant police officer's own observations of Defendant in the area "just prior to the shooting" and that he "was the only male in a wheelchair in the [area] prior to the shooting." Ex. B at 4-5.

Defendant argues that the affiant police officer's "contemporaneous police reports from August 2021 fail to mention [that it was] a confidential reliable informant who provided [Defendant's] address." ECF No. 40 at 5. Rather, the officer reported that he learned Defendant resided at the Minneapolis residence through surveillance and had observed Defendant come and go from the Minneapolis residence. As the Government points out, Defendant's argument assumes that the means by which the officer came into the information regarding Defendant residing at the Minneapolis residence are "mutually exclusive." ECF No. 43 at 3. And, although the Court has no reason to doubt the representations of defense counsel (and the Government does not appear to dispute their

accuracy), the relevant report(s) have not been offered. *Cf. Franks*, 438 U.S. at 171. Moreover, even if the report(s) had been offered and even assuming for sake of argument that the report(s) would have caused the Court to set aside the informant's report that Defendant "sle[pt] overnight" at the Minneapolis residence, there was still information that could support a nexus between Defendant and the Minneapolis residence based on the informant's report that Defendant was frequently at the Minneapolis residence where he had been observed to be in possession of a handgun and narcotics. *See Jones*, 74 F.4th at 948 ("Factors to consider in determining if a nexus exists include the nature of the crime and the reasonable, logical likelihood of finding useful evidence.").

In sum, the content that remained in the Residence Warrant application after setting aside the cell-site information obtained from the Tracking Warrant could support a finding that there was a sufficient nexus between Defendant and the Minneapolis residence and a fair probability that evidence of narcotics and weapons offenses would be found on Defendant's person and at the Minneapolis residence. Accordingly, as there remained sufficient content in the application that could support a finding of probable cause, Defendant is likewise not entitled to a *Franks* hearing on the Residence Warrant.

**E. Conclusion**

Having not shown that the challenged statements and omissions were necessary to a finding of probable cause, Defendant is not entitled to a *Franks* hearing on either the Tracking Warrant or the Residence Warrant, and his motion is denied.

# VI. ORDER

Based upon the record, memoranda, and oral arguments of counsel, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The Government's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 16(b), 12.1, 12.2, 12.3 and 26.2, ECF No. 20, is **GRANTED**.

2. Defendant's Motion for Discovery Including Laboratory Case Files Pursuant to *Brady v. Maryland*, ECF No. 24, is **GRANTED**.

3. Defendant's Motion to Discover Confidential Informants, ECF No. 25, is **DENIED**.

4. Defendant's Motion for *Franks* Hearing, ECF No. 26, is **DENIED**.

5. **Within seven days from the date of this Order**, the parties shall have (1) met and conferred as to whether Exhibit D and this Order may be unsealed, and (2) filed a joint letter indicating whether these documents may be unsealed and, if not, explaining why they should remain sealed

6. All prior consistent orders remain in full force and effect.

7. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like.

Date: September__22__, 2023                 _____*s/ Tony N. Leung*_____
                                                              Tony N. Leung
                                                              United States Magistrate Judge
                                                              District of Minnesota


                                                              *United States v. Bobo*
                                                              Case No. 23-cr-151 (SRN/TNL)